UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MORRIS WHITE, LAWRENCE CARRINGTON, and
GEORGE GARDNER,
Individually and on Behalf of All Other
Persons Similarly Situated,

                          Plaintiffs,                              **MEMORANDUM & ORDER**

        - against -                                              07 CV 2345 (RJD) (JMA)

WESTERN BEEF PROPERTIES, INC., et al.,

                          Defendants.
------------------------------------------------------------------------X
DEARIE, Judge.

        In Parts I and II of a Report and Recommendation dated September 26, 2011, Magistrate Judge Joan M. Azrack recommends that the Court deny plaintiffs' motion under Rule 23 of the Federal Rules of Civil Procedure for class certification of their state law overtime claims. ECF No. 162. Vigorous, copious litigation addressed to Rule 23's "commonality" and related "predominance" requirements ensued: before the Court are plaintiffs' timely objections (ECF Nos. 163, 164), defendants' response to those objections (ECF Nos. 166, 167 with Exhibits A-J), a subsequent set of papers from plaintiffs styled as their "reply objections" (ECF No. 168) and, lastly, a "sur-reply" with additional exhibits from defendants. ECF No. 172 and Exhibits A-C. Rule 72 does not contemplate the reply-round of submissions. See Fed. R. Civ. P. 72(b)(2) (authorizing "objections" and a "respon[se]" thereto).[1] The Court has accepted and reviewed all post R&R filings as part of its de novo review of the full body of materials submitted to

---

[1] Indeed, plaintiffs filed their "reply" without first seeking leave of Court. Defendants, by contrast, first sought and obtained permission before filing their sur-reply, ECF No. 170, but then rewarded the Court with a submission totaling 46 pages.

Magistrate Judge Azrack on the motion, which include: each of the unabridged deposition transcripts, the deposition excerpts, the declarations, additional exhibits, the many briefs, and all cited authorities. ECF Nos. 145-160. The Court has also studied the jurisprudence emerging in the wake of <u>Wal-Mart v. Stores, Inc. v. Dukes</u>, 564 U.S.__, 131 S. Ct. 2541 (2011), a subject the parties' did not fully address at the R&R juncture. Finally, the Court embarks on its Rule 23 analysis already quite familiar with the parties' essential theories on certification, as it has decided two prior motions that substantially previewed the certification-related issues. <u>See</u> Memorandum & Order dated June 17, 2008, ECF No. 32 (denying defendants' motion to dismiss the class allegations, concluding, at the pleading stage, that the tension between a possible FLSA opt-in collective action to recover unpaid overtime and a possible Rule 23 opt-out class on the parallel state law claim did not require dismissal of the state law claims); Memorandum & Order dated July 23, 2009, ECF No.72 (based, again, only on the pleadings, provisionally certifying plaintiffs' federal overtime claim as a collective action under section 16(b) of the FLSA).

As explained more fully below, what enabled plaintiffs to prevail on motions addressed to the pleadings is not sufficient at the Rule 23 stage, where the party seeking certification must satisfy each of the Rule's requirements by a preponderance of the *evidence*. Based on all of the materials inventoried above, the Court has independently arrived at the same conclusion as Magistrate Judge Azrack on class certification largely for the reasons set forth in the R&R, but also for the additional reasons, mostly a matter of emphasis, addressed below. Accordingly, the Court adopts Parts I and II of the R&R in their entirety and as supplemented here, and denies plaintiffs' motion for class certification.[2]

---

[2] Part III of the R&R addresses plaintiffs' separate application for leave to amend their Amended Complaint. <u>See</u> Part V of this Memorandum & Order.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b)(3) provides that, when resolving objections to the report and recommendation of a magistrate judge, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and then either "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accord 28 U.S.C. § 636 ("[a] judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "may also receive further evidence or recommit the matter to the magistrate judge with instructions").

As the Supreme Court instructed some time ago,

> It should be clear that . . . the statute calls for a de novo determination, not a de novo hearing. We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required "determination."

United States v. Raddatz, 447 U.S. 667, 674 (1980). Indeed, the phrase "de novo determination" in section 636 "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, ch[ooses] to place on a magistrate's proposed findings and recommendation," provided the district court remains the ultimate decision-maker. Raddatz, 447 U.S. at 676.

"The district judge is not required to review, under a de novo or any other standard, [the] factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed, so long as such are not clearly erroneous." United States v. Burke, 09 CR 135 (SJ), 2011 WL 2609837, *1, (E.D.N.Y. July 1, 2011) (internal citations omitted).

3

## DISCUSSION

**I.**

Wal-Mart unequivocally instructs district courts that "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S. Ct. at 2551 (internal quotation and citation omitted) (emphasis in original). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed class's] claims can productively be litigated at once," not only must those claims "depend upon a common contention," id., at 2551, but "[t]hat common contention . . . must be of such a nature that it is *capable of classwide resolution*—which means that determination of its truth or falsity will *resolve an issue that it central to the validity of each one of the claims in one stroke*." Id. (emphasis added).

Magistrate Judge Azrack correctly identified this principle, see R&R at 6, and properly applied it to the sprawling factual record in this case. See R&R at 7 and 9-12. She appropriately concluded that the liability question here was not resolvable "in one stroke" because of the tremendously disparate accounts the putative class members offer of their duties in general and of the component that is or might be managerial for purposes of the management exemption. In the face of such varying accounts by department managers ("DMs") and assistant depart managers ("ADMs") of their work responsibilities, the Court agrees that the only valid way to resolve the liability question in this case will be individualized application of the management exemption's duties test. Many DMs or ADMs may well have a valid claim that defendants' misclassified them as exempt, but the relevant point for class certification purposes

4

is that plaintiffs cannot show how a factfinder would resolve that crucial liability question other than on an employee-by-employee basis.

Mindful that the Court's prior rulings in this matter may be deemed to have forecast a different result here, the Court emphasizes that those decisions were based solely on the pleadings, whereas the denial of Rule 23 certification, occurring after the close of discovery, is based on deficiencies in plaintiffs' proof. Management exemption misclassification suits, the Court recognizes, are not categorically incapable of class treatment. See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 549 (2d Cir. 2010), cert. denied, __U.S.__, 132 S. Ct. 368 (Oct. 3, 2011). ("We do not understand Hertz to contend that exemption [in the overtime context] is an *inherently* individualized inquiry, such that class treatment will never be appropriate in exemption cases and we note that district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees") (emphasis in original) (internal citations omitted). Rather, as Myers explains, class certification in management exemption suits is appropriate where there is "*evidence* tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." Id. (emphasis added). It is precisely plaintiffs' failure to show, through evidence, the necessary material similarity among the work responsibility levels of those whom they wish to treat as a class that precludes certification.

## II.

Rule 23 does not impose upon plaintiffs the impossible task of showing that all class members have identical job responsibilities. Rather, under Myers and the authorities it cites, certification is appropriate when the evidence shows that "the job duties of putative class members were '*largely consistent*'" or when the individual employees' "deposition testimony

5

relating to their specific job duties is *generalizable*" to others in the proposed class. 624 F.3d at 549 (emphases added) (internal quotation and citation omitted). Accordingly, the Court conducted its de novo review of the deposition testimony with an eye toward discerning whether the descriptions of DM and ADM duties and responsibilities, despite their many facial variations, might nevertheless be "largely consistent" or "generalizable" within the meaning of Myers. This is arguably a slightly different inquiry than the question Magistrate Judge Azrack resolved in the negative (i.e., whether the workers' duties were "uniformly non-managerial"),[3] and also more closely tailored to the liability standard, which turns not on the aberrant or occasional duty but on what the workers do *for the most part.*[4] Looking for the "largely consistent" or the "generalizable" also comports with Rule 23 requirement that plaintiffs establish commonality not beyond all doubt but by a preponderance of the evidence.[5]

One suggested "generalizable" feature of the record is the undisputed fact on which the lawsuit is premised, namely, defendants' decision to classify *all* DMs and ADMs as exempt. Defendants do not assert, and nothing in the record suggests, that defendants made this decision only after examining each individual DM's and ADM's duties, despite the fact that, on this motion, defendants characterize the deposition accounts of DM and ADM job duties as "wildly disparate." ECF No. 160 at 15. The Second Circuit in Myers agreed with the Ninth Circuit's

---

[3] See R&R at 11 ("find[ing] the quantum of evidence submitted inadequate to establish that the potential class members' duties as a whole were uniformly non-managerial").

[4] See e.g., 29 C.F.R. §541.100(a)(2)-(3) (employees qualify for the "executive" exemption when, *inter alia*, their "*primary* duty" is management" and they "*customarily and regularly*" direct the work of two more other employees); 29 C.F.R. §541.700 ("'primary duty' means the *principal, main, major or most important duty* that the employee performs") (emphases added).

[5] Although plaintiffs have the burden on a Rule 23 motion, it is the employer who ultimately bears the burden of proving the merits of its exemption argument. Myers, 624 F.3d at 550.

view that "while such a policy suggests 'the employer believes some degree of homogeneity exists among the employees' and is thus in a general way relevant [ ], the existence of a blanket exemption policy, standing alone, is not itself determinative'" of the certification inquiry. Id., 624 F.3d at 549 (quoting In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957, 959 (9th Cir. 2009)). The "fact of common exemption," the Second Circuit further explained, "does not establish whether all plaintiffs were *actually* entitled to overtime pay" and thus does not make the liability question "provable in common." Myers, 624 F.3d at 959 (emphasis in original).

To be sure, it may trouble plaintiffs that defendants treat all DMs and ADMs as qualified for the management exemption while asserting that that same group's duties are too disparate for class treatment in this overtime litigation. The very argument has been accepted as part of the rationale for certifying an overtime litigation class. See, e.g., Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005). Nevertheless, there can be no doubt that more is required: although the Ninth Circuit affirmed the district court in Wang, see 623 F.3d 743 (9th Cir. 2010), the Supreme Court granted certiorari and vacated the Ninth Circuit's decision for "reconsideration in light of" Wal-Mart. See Chinese Daily News, Inc. v. Wang, __ U.S.__, 132 S. Ct. 74 (Oct. 3, 2011).

But plaintiffs, as noted, have little else, for they simply cannot argue away the widely varying deposition testimony. While some depositions perfectly comport with plaintiffs' misclassification theory, others directly contradict it. Representative of the former is the testimony of Sandy Espinal. Asked to name the duties he performed as ADM of a Western Beef meat department, Espinal replied: "Wrap, cut meat, clean, pack out provisions, break down the trucks, inventory." ECF No. 159-1 at 7. Espinal also testified as follows:

> Q. What were you doing as assistant manager that you had not done when you were the chicken man?
>
> A. Everything is the same.
>
> Q. There was nothing that you were doing in addition to what you had been doing when you were the chicken man?
>
> A. No.
>
> Q. You were working a lot more hours?
>
> A. Yes.
>
> Q. Those extra hours, you were doing the same things you had been doing when you were the chicken man?
>
> A. Correct.

ECF No. 159-1 at 7-8.

> By contrast, George Gardner, one of the named plaintiffs, testified as follows:
>
> Q. When you moved from being a clerk to a manager in the grocery department, how did that affect what you did on a day-to-day basis?
>
> A. It's a big difference . . .
>
> Q. You had to do a lot more things?
>
> A. Sure.
>
> Q. What kind of things did you have to do in addition as a grocery manager that you had not done as a clerk?
>
> A. You have to do orders, you have to talk – when the salespersons come in, you have to talk to them, taker order from them . . . You [also] have to take care of the – guide th[e other clerks] on the floor, make sure the stuff is packed out.

ECF 159-8 at 7-8. Oddly, the same George Gardner also submitted a declaration in which he appears to assert that his duties were primarily non-managerial. ECF No. 148 at 1-2.

Likewise, whereas several employees testified that they "manage" a department consisting of only themselves or at most one other worker (e.g., Morris White, ECF No. 155-2 at

8

5), others claimed to have been at the helm of departments (such as meat, in the larger Western Beef stores), containing up to 15 employees (e.g., Espinal, ECF No. 159-1 at 11). For some, "overseeing" the work of other clerks in their department appears to be their defining responsibility (e.g., Jose Gomez, ECF No. 153-2 at 4), while for others, the actual supervising of others seems to be a periodic or incidental component of their job (e.g. Pedro Reynoso, ECF 154-1 at 11 et seq.)

To reiterate, the Court's task at the Rule 23 stage is not to resolve the liability question but to decide "whether the constituent issues that bear on [Western Beef's] ultimate liability are *provable in common*." Myers, 624 F.3d at 549 (emphasis added). Defendants do not exaggerate in describing the depositions as "wildly disparate" accounts of the day-to-day job duties and responsibility levels of the DMs and ADMs working at Western Beef. Despite the promising theories advanced in the pleadings, neither the "largely consistent" nor the "generalizable" has emerged from the evidence.

That evidence spans nine different departments—Meat, Produce, Frozen, Fish, Grocery, Bakery, Deli, Dairy and Receiving—each of which has a distinct set of concerns and job duties. In the face of the qualitative differences inherent in department specialization (and, in some instances, size), and the differing levels of responsibility the various deponents appear to claim to exercise, the Court cannot permit class treatment of all DM and ADM overtime claims absent some evidence that, despite the variation in the employees' accounts of their duties, the employer might nevertheless maintain a standardized company-wide description of responsibilities for DMs and ADMs. See, e.g., Youngblood v. Family Dollar Stores, 09 CV 3176 (RMB) 2011 WL 4597555, *2-4 (S.D.N.Y. Oct. 4, 2011). (in management exemption overtime suit, certifies class of all Family Dollar store managers, despite the individualized nature of the duties test, because

9

there was evidence of "centralized" employer "policies" setting forth, "often in minute detail," the essential duties of store managers company-wide). Deciding whether such a standardized job description or set of responsibilities qualifies for the "management exemption" would resolve the principal liability question "in one stroke." But the record here contains no evidence that job duties and responsibility levels are the product of centralized or standardized corporate policy. The Court cannot certify a class on the basis of a hunch that there exists some corporate document that plaintiffs failed to discover.

### III.

One final point requires brief attention. Wal-Mart recognizes that one of the ways individual plaintiffs can "bridge[]" the "conceptual gap" between their claims and those of the class that they claim suffered a similar injury is by "[s]ignificant proof" that the employer acted under a "general policy" to engage in the alleged unlawful conduct. Wal-Mart, 131 S. Ct. at 2553 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 159 n. 15 (1982)). In the two prior motions in this case, the gravamen of plaintiffs' case was their assertion of just such a policy: specifically, plaintiffs have alleged and argued that it was defendants' "policy" to assign managerial titles to workers who duties were for the most part *not* managerial for the purpose of evading the legal obligation to pay overtime, the implication being that the titles DM and ADM reflected sham promotions accompanied by token or occasional managerial responsibilities and longer hours. Assuming arguendo that plaintiffs do not intend to abandon this argument, it nevertheless would not support certification because the record does not contain "significant proof" of the alleged policy.

To be sure, it is rare that litigants unearth a "smoking gun" directly proving the illegal corporate policy that their pleadings allege. But even inferential proof is lacking here: the wide

10

variation in the deposition testimony of DM and ADM work responsibilities militates strongly against the inference that a *centralized* policy to misclassify (presumably, in order to evade the overtime requirements) is the culprit. As noted, alongside deposition excerpts supporting apparently actionable overtime claims are excerpts describing seemingly bona fide managerial work.

In further support of their policy assertion, however, plaintiffs also offer four declarations from employees (the three named plaintiffs and one opt-in plaintiff) asserting, in general and conclusory terms, that they know of many others who, like themselves, work as DMs or ADMs but do not have managerial responsibilities. ECF Nos. 146-149. But these four documents do not amount to "significant proof" of the alleged company-wide policy to misclassify. The assertions lack specificity, and they are of questionable probative value for the additional reason that they appear only in the attorney-drafted declarations of three individuals who were also deposed, and in the declaration of a fourth individual, an opt-in plaintiff, whom the Court ordered dismissed from the action because she could not be produced for a deposition. See Order dated July 8, 2011, ECF No. 142.

**IV.**

Appearing for the first time in their reply objections—in a lawsuit begun nearly four and a half years ago (ECF No. 1, June 11, 2007)—is plaintiffs' alternative request that the Court certify a class of "clerks with the title 'Manager'" who worked "in departments where they worked alone or with only one other employee." ECF 168 at 2-3. Plaintiffs understandably argue, in reliance on the applicable regulation, that employees who did not direct the work of two or more employees are ineligible as a matter of law for the management exemption. See 29 C.F.R. § 541.100(a)(2) (to qualify for management exemption, employee must "customarily and

11

regularly direct[] the work of two or more other employees"). Assuming without deciding that this materially different, last-minute request is properly before the Court at this time, it is denied without prejudice. Plaintiffs have not addressed how this proposed class would measure up against each of Rule 23's requirements, and based on what plaintiffs have offered, they may fail at the threshold factor, numerosity. While "[t]here is no specific minimum number of putative class members that will satisfy the numerosity requirement, and the plaintiffs need not establish the population of the putative class with precision so long as they reasonably estimate that the number is substantial," Calabrese v. CSC Holdings, Inc., 2011 WL 425879, *7 (E.D.N.Y. Feb. 29, 2009) (DLI) (internal quotation and citations omitted), plaintiffs identify at most between 11-13 employees (depending upon how one reads the depositions) who might fall into such a class. This is plainly not a substantial number and well below the numerosity presumption of 40.

## V.

Plaintiffs also move under Rule 15(a) for leave to amend their Amended Complaint, in light of the Supreme Court's decision in Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S.__, 130 S. Ct. 1431 (2010), to delete paragraph 128, in which they "waive their right to punitive damages under New York Labor law." ECF 39 at 19. Although they are in federal court, plaintiffs apparently included this waiver to remove any bar to certification that might be presented by New York's class certification provision, C.P.L.R. § 901(b), which provides that "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." Rule 23 contains no such limitation, and in Shady Grove, the Court held that as the federal rule, Rule 23 governs class certification in all federal court litigation and overrides New York law to the contrary. 131 S. Ct. at 1437-1442.

12

Appropriately, defendants do not object to plaintiffs' request for leave to amend, Magistrate Judge Azrack recommends that leave be granted, see R&R (Part II) at 14-15, and neither party has addressed the subject in the post-R&R submissions.  Finding no clear error, the Court would ordinarily adopt the recommendation without qualification.  But the Court observes that inasmuch as the punitive damages waiver was intended to remove a possible bar to certification, the denial of Rule 23 certification renders moot any apparent reason to remove the waiver.  Nevertheless, the future course of the lawsuit having yet to be charted, and there being no legal basis for denying the request, plaintiffs' request for leave to amend is granted.

## CONCLUSION

The Court adopts the Report and Recommendation of Magistrate Judge Azrack as supplemented above and denies plaintiffs' motion for certification of a state-wide class of present or former employees of Western Beef who hold or held the title "Department Manager" or "Assistant Department Manager."  Plaintiffs' motion for leave to amend their Amended Complaint solely to delete paragraph 128 is granted.  Plaintiffs' alternative request for certification of a state-wide class of present or former employees of Western Beef who hold or held the title "Department Manager" of a department "where they worked alone or with only one other employee" is denied without prejudice.

SO ORDERED.

Dated:  Brooklyn, New York
       December 9, 2011

                                  s/ Judge Raymond J. Dearie
                                  _____
                                  RAYMOND J. DEARIE
                                  United States District Judge